**\*NOT FOR PUBLICATION\***

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
                             :

| | |
|---|---|
| ASAH, THE CHILDREN'S INSTITUTE,   : | |
| VERONA; THE CHILDREN'S INSTITUTE : | Civil Action No.: 16-3935 (FLW) (DEA) |
| LIVINGSTON; MICHELE HOMA;      : | |
| HOLLYDELL SCHOOL, HURFFVILLE  : | **OPINION** |
| MAUREEN GROSSI; B.R. o/b/o M.R.;  : | |
| S.D. o/b/o W.D.,                      : | |
|                           : | |
|            Plaintiffs,      : | |
|                           : | |
|         v.              : | |
|                           : | |
| NEW JERSEY DEPARTMENT OF    : | |
| EDUCATION,                   : | |
|                           : | |
|           Defendant.     : | |

_____:

**<u>WOLFSON</u>, <u>United States District Judge</u>:**

Plaintiffs ASAH, the Children's Institute ("TCI"),[1] Michelle Homa ("Homa"),

HollyDELL School ("HollyDELL"), Maureen Grossi ("Grossi"), B.R. on behalf of M.R., and

S.D. on behalf of W.D. (collectively, "Plaintiffs") commenced this action against defendant New

Jersey Department of Education (the "DOE"), asserting educational-based claims arising out of

federal and state constitutional violations, as well as violations of federal and state law.  In this

action, Plaintiffs challenge the decision of the DOE to reverse its longstanding practice to fully

reimburse private schools for students with disabilities, including TCI and HollyDELL, for

_____

[1] In the Complaint, Plaintiffs separately name: (i) the Children's Institute, Verona; and (ii) the
Children's Institute, Livingston.  However, Plaintiffs refer to the two school collectively as
"TCI."  For the purpose of this motion, the Court will also refer to the schools as "TCI."

related services provided to disabled students, such as M.R. and W.D.[2]  Plaintiffs complain that

TCI and HollyDELL have not been fully reimbursed for providing related services to their

disabled students.  Furthermore, Plaintiffs assert that the DOE unlawfully imposed maximum

salaries on related service providers, including Homa and Grossi, that private schools for

students with disabilities may charge the State.  Plaintiffs maintain that the maximum salaries are

below the salaries paid to related service providers in other public and private schools.  Presently

before the Court is the DOE's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and

12(B)(6).  For the reasons set forth below, the DOE's motion to dismiss is **GRANTED**.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### a.     Background

Plaintiffs alleges that, in the State of New Jersey, school districts are obligated to provide

free and appropriate education to students with disabilities.  Compl., ¶ 32.  Plaintiffs claim that,

in order to meet the unique needs of each disabled student, school districts must develop a plan

called an Individualized Education Program ("IEP"), which "must be in place for every disabled

child at the beginning of every school year, and it must be reviewed at least annually."  Id. at ¶¶

34, 36.  Plaintiffs allege that, while school districts seek to place disabled students in general

education classes, that arrangement is not always possible.  Id. at ¶ 37.  Indeed, when the student

cannot be satisfactorily educated in general education classes, the school district may send the

disabled student to a private school for students with disabilities that is approved by the DOE.

Id. at ¶ 37.  Plaintiffs allege that school districts contract with private schools, and that each

---

[2] N.J.A.C. § 6A:14-3.9(a) defines related services as services "including, but not limited to, counseling, occupational therapy, physical therapy, school nurse services, recreation, social work services, medical services and speech-language services...."

private school must enter into the DOE mandated tuition contract, which governs the costs associated with such educational services.[3]  Id. at ¶ 38, Ex. A (the "Mandated Tuition Contract").

Relevant here, on June 16, 2015, the DOE issued a memorandum, which states: "[i]t has come to the attention of the [DOE] that some approved private schools for students with disabilities [] are charging sending districts separately for related services, or requiring districts to provide their own related services staff to implement IEPs."  Id. at Ex. B (the "July 2015 Memorandum").  In the July 2015 Memorandum, the DOE explains that, under the Mandated Tuition Contract and state regulations, private schools for students with disabilities are required "to include the costs of special education and related services in their tuition rates and that they can only charge separately for one-on-one aides for students."  Id.  Because the DOE received numerous questions in response to that memorandum, it issued another memorandum, on February 9, 2016, that addressed "Frequently Asked Questions" about the July 2015 Memorandum.  Id. at Ex. C (the "February 2016 Memorandum").  On May 3, 2016, the DOE issued a revised memorandum.[4]  See Certification of Caroline G. Jones, Esq. ("Jones Cert."), Ex. A (the "May 2016 Memorandum").

_____

[3] Plaintiffs have attached several documents to the Complaint, including the Mandated Tuition Contract and several memoranda issued by the DOE.  Because these documents are attached to the Complaint, the Court may consider them on this motion.  See Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007); see Marks v. Struble, 347 F. Supp. 2d 136, 143 (D.N.J. 2004) (stating that, on a motion to dismiss, courts "generally only considers the allegations in the complaint, exhibits attached to the complaint, and public records," and that courts cannot consider matters extraneous to the pleadings).

[4] "[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings….  However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (alteration in original) (internal quotation marks and citation omitted); see In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993) (internal quotation marks and citation omitted) (stating that "a court may consider an

In the May 2016 Memorandum, the DOE reiterated that, "[f]or students placed in [private schools for students with disabilities], the cost of related services required by an IEP must be included in the tuition rate charged by the [private school] to the sending district with limited exception." Id. In other words, private schools "must implement the IEP to ensure that the required counseling services are provided and the cost for the provision of the counseling services shall be included in the calculation of the certified actual cost per student and final tuition rate charged to the sending district." Id. Furthermore, the DOE imposed maximum salaries for related services that private schools may use to calculate their annual tuition rates. See Compl., Ex. D (the "Maximum Salaries"). The DOE explained that a private school "can pay staff members or consultants more than the maximum salary for related services, but the amount of salary(s) and associated benefits in excess of the maximum salary amount for that job title cannot be included in the certified actual cost per student." See Jones Cert., Ex. A, the May 2016 Memorandum.

Plaintiffs allege that, prior to the issuance of these memoranda, "the DOE [] permitted [private schools for students with disabilities] to obtain full reimbursement for related services, provided that the related services were administered in fulfillment of students' IEPs and were provided by qualified employees or approved agencies" Compl., ¶ 76. In addition, Plaintiffs assert that the DOE permitted private schools "to allow sending districts to send related service providers to the [private schools] to service their own students, so that the provider costs were not incurred by the [private school] and then distributed among all sending districts (within the

_____

undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Here, Plaintiffs rely on the DOE memorandum, dated February 9, 2016, but they did not attach the revised DOE memorandum, dated May 3, 2016, to the Complaint. These memoranda are substantially similar. Accordingly, the Court will consider the revised memorandum to be integral to the allegations in the pleadings.

tentative tuition rate)." Id. at ¶ 77. Plaintiffs complain that "the DOE announced a reversal of its prior practices" by issuing the June 2015 Memorandum, and that "[t]his reversal occurred at the end of the 2014-15 school year -- after IEPs had been developed for the 2015-16 school year, after [the private schools] had admitted students in reliance on the DOE's past permissions regarding related service provision, and after [the private schools] had already established their budgets for the coming 2015-16 school year." Id. at ¶ 82. Simply stated, Plaintiffs claim that "the DOE abruptly increased the amount of related services [private schools] would be required to provide directly, while limiting the funds [private schools] might use to purchase the services." Id. at ¶ 85.

**b.     The Parties**

**i.      ASAH**

ASAH is an organization of private schools and agencies in the State of New Jersey. Compl., ¶ 1. Although not alleged in the Complaint, Plaintiffs claim that the membership of ASAH is comprised of over 160 private schools and agencies, which provide specialized educational services to more than 11,000 students with disabilities. See Pls.' Br. in Opp. at pg. 1. ASAH works with its members and the DOE "to develop policy, promote effective educational practices, and foster productive collaborations between private schools, public school districts, and local communities." Id. In addition, ASAH advocates for both legislative and regulatory changes for the benefit of its member schools and their disabled populations. Id.

**ii.     TCI and Homa**

TCI is a not-for-profit private school for children with disabilities, which is approved by the DOE. Compl., ¶ 47. TCI has two campus locations. Id. at ¶ 48. The lower school is located in Verona, New Jersey, and it services students from pre-kindergarten to ninth grade. Id. The

upper school is located in Livingston, New Jersey, and it services students from tenth to twelfth grade.  Id.  Plaintiffs assert that each student that attends TCI has been classified by the sending school district as eligible to receive special education and related services.  Id. at ¶ 49. According to Plaintiffs, TCI provides special educational and related services to approximately 250 students.  Id. at ¶ 50.  Most of those students have been diagnosed with autism or other similar disabilities.  Id. at ¶ 51.

TCI employs 13 speech therapists because most of the students require speech language therapy.  Id. at ¶ 57.  Plaintiffs explain that "[a]ll but one of [the] speech therapists are salaried employees."  Id. at ¶ 104.  Since the promulgation of the June 2015 Memorandum, "TCI has had to adjust its therapists' salaries in order to squeeze them under the DOE's maximum [salary requirements]."  Id. at ¶ 105.  Plaintiffs claim that its speech language therapists earn around $74 per hour, which "is far below market value and far below what public entities servicing students with special needs are permitted to spend on speech language services."  Id. at ¶¶ 107-08.

Furthermore, Plaintiffs state that some TCI students also receive occupational or physical therapy.  Id. at ¶ 58.  In order to provide these related services, TCI contracts with approved agencies, including AJL Therapy for Kids ("AJL").  Id. at ¶ 59.  Homa, a named plaintiff, is a co-owner of AJL.  Id. at ¶ 117.  Plaintiffs asserts that "their services are provided at higher rates – rates that often exceed the maximum permitted by the DOE."  Id. at ¶ 113. Plaintiffs claim that, based on the maximum salaries imposed by the DOE, "TCI was not permitted to exceed an hourly rate of $72."  Id. at ¶ 115.  However, Plaintiffs allege that "TCI scrambled to comply... but was unable to acquire physical and occupational therapy services for less than $88 per hour."  Id. at ¶ 114.  Plaintiffs assert that AJL "agreed to accept personally the reduced rates [of $88 per hour] in servicing TCI student."  Id. at ¶ 119.  According to Plaintiffs,

"by negotiating the lower rate with AJL, TCI sought to ensure that its students received all of the related services required by their IEPs, mandated under the IDEA, and administered by experienced professionals." Id. at ¶ 125.

Plaintiffs allege that, as a result of the action of the DOE, "TCI stands to lose almost $150,000 for related service costs in excess of the DOE's maximum." Id. at ¶ 129. Plaintiffs claim that "[t]hese funds were previously earmarked for the operation of several special programs not funded by tuition," but "[the] programs will be severely curtailed, if the DOE disallows the funds TCI expended in order to meet its related service costs." Id. at ¶¶ 130-31.

### iii.    HollyDELL and Grossi

HollyDELL is a not-for-profit private school for children with disabilities approved by the DOE. Id. at ¶ 60. Similar to TCI, each student that attends HollyDELL has been classified by the local public school district as eligible to receive special education and related services. Id. at 62. HollyDELL provides special educational and related services to approximately 60 students with various physical, emotional, social, and intellectual needs. Id. at ¶ 64. The students, who are between the ages of three and twenty-one years old, have been diagnosed with cerebral palsy and other severe disabilities. Id. at ¶ 65. HollyDELL provides its students with a variety of related services, including physical therapy, occupational therapy and speech therapy. Id. at ¶ 69. HollyDELL employs five physical therapists, a physical therapist assistant and three speech language therapists. Id. at ¶¶ 71-72.

Grossi is one the five physical therapists who is employed by HollyDELL. Id. at ¶ 92. However, HollyDELL allegedly denied Grossi an annual increase in order to keep her salary below the DOE maximum, and that HollyDELL was "forced" to increase the number of hours that Grossi works at the school, which reduced her hourly rate from $80.39 to $68.38. Id. at ¶¶

94-95.  Furthermore, Plaintiffs claim that, since Grossi reached the maximum salary for a physical therapist, she will not receive another raise for the remainder of her career at HollyDELL.  Id. at ¶ 97.  Indeed, according to Plaintiffs, Grossi must delay her plans for retirement.  Id. at ¶¶ 98-99.

Plaintiffs further allege that HollyDELL sought to hire an additional occupational therapist.  Id. at ¶ 101.  While HollyDELL made an offer to a former employee, that individual rejected the offer of employment "because her then-current rate for services exceeded the maximum salary permitted by the DOE."  Id. at ¶ 102.  Instead, HollyDELL filled the position with "a recent graduate, possessing little experience in servicing medically fragile students."  Id. at ¶ 103.  According to Plaintiffs, HollyDELL cannot attract qualified persons with adequate experience due to "the salary limitations imposed by the DOE."  Id.

#### iv.     S.D. o/b/o W.D.

S.D. is the parent of W.D., a 6-year-old student that attends TCI.  Id. at ¶ 132.  W.D. has been diagnosed with autism and Lacrimo-Auriculo-Dento-Digital Syndrome ("LADD").  Id. at ¶ 133.  As a result of his disabilities, W.D. suffers from low muscle tone and visual impairments, and he is forced to walk on his toes because of his shortened tendons.  Id. at ¶ 134.  W.D. also suffers from sensory integration difficulties, and he struggles to produce tears or saliva, which has caused his teeth to rot.  Id.  Plaintiffs allege that, because of the condition of his teeth, W.D. is required to undergo specialized feeding therapy.  Id.  Plaintiffs claim that TCI provides specialized feeding therapy to W.D., "but at rate that exceeds the DOE's maximum salary limitation."  Id.

W.D. began attending TCI at age three.  Id. at ¶ 139.  Plaintiffs allege that, when he started at the school, "W.D. was non-verbal, was not potty-trained, had difficulty walking, and

required a minimum of 1.5 hours to consume each meal." Id. at ¶ 140. Plaintiffs asserts that "[h]is IEP called for him to receive four 30-minute sessions of speech therapy, three 30-minute sessions of occupational therapy (including one session for specialized feeding), two 30-minute sessions of physical therapy, and extended school year programing that included the same rate of therapy services as during the school year." Id. at ¶ 141. However, during his three years at the school, W.D. has made significant improvements, id. at ¶ 142, and "[h]e has begun to communicate using a personalized communication system; his walking has improved; he is able to grasp books and crayons; he is potty-trained at school with some assistance; he is able to feed himself with minimal assistance and consume each meal within approximately 30 minutes; and he is able to better tolerate sensory inputs, such as touch." Id. at ¶ 143.

Plaintiffs claim that "S.D. finds W.D.'s placement at TCI to be exceedingly appropriate." Id. at ¶ 144. Indeed, Plaintiffs further claim that S.D. does not have any "confidence" that other in-district programs would adequately address the needs of the child. Id. at ¶ 145. According to Plaintiffs, "W.D. requires a considerable amount of related services that the DOE would seek to prevent TCI from administering, due to the fact that the costs for such services exceeds the salary limitations imposed upon [private schools for students with disabilities]." Id. at ¶ 146. Plaintiffs posit that, "if S.D. was faced with having to choose whether to maintain W.D.'s placement at TCI and forfeit his related services or accept an in-district or other placement where W.D.'s related services were available, she would elect for W.D. to remain at TCI, due to its exceeding appropriateness by all other metrics." Id. at ¶ 147.

v.      **B.R. o/b/o M.R.**

B.R. is the parent of M.R., a 16-year-old boy who attends Celebrate the Children ("CTC"), a private school for students with disabilities in Denville, New Jersey.[5] Id. at ¶ 148. M.R. started attending CTC in the second grade, when "his abilities were quite limited." Id. at ¶ 152. M.R. has been diagnosed with autism and hypoglycemia, and he suffers from a significant visual impairment. Id. at ¶ 149. According to Plaintiffs, the Cedar Grove school district has classified M.R. as eligible to receive special education and related services. Id. at ¶ 150. Plaintiffs assert that his "IEP team selected [CTC] as the placement that was most appropriate to address [the student's] unique academic, physical, and social/emotional needs." Id. at ¶ 151.

Plaintiffs assert that, when M.R. started at the school, he "was unable to sit in his chair for more than 30 seconds at a time," and that "[h]e could not remain at school for a full day." Id. at ¶ 153. Plaintiffs allege that "M.R. was also self-injurious and almost non-verbal." Id. According to Plaintiffs, after ongoing treatment, M.R. "has demonstrated tremendous progress over the years." Id. at ¶ 158. Indeed, Plaintiffs claim that "[h]e is now verbal, able to self-regulate, and even works one day weekly at a recycling center." Id.

In order to maintain his progress, "M.R.'s current IEP calls for related service support, including occupational therapy three times each week for 30 minutes each session, speech language therapy three times each week (one individual and two group) for 30 minutes each session, and physical therapy twice each week (in group) for 30 minutes each session." Id. at ¶ 159. Additionally, "[a]fter school, M.R. receives occupational therapy once each week for 60 minutes and a transition program twice each week for 90 minutes each session," and, during the summer break, "M.R. receives occupational, physical, and speech therapy for one hour each week for five weeks in-home or at a therapy center." Id.

---

[5] CTC is not a named party in this action.

Plaintiffs claim that, in January 2016, representatives from the Cedar Grove school district "requested that B.R. attend an 'emergency IEP meeting' to discuss a new placement for M.R. at which all of M.R.'s related services could be provided during the school day." Id. at ¶ 160. The representatives purportedly "advised B.R. that her options were to select a new placement that included all of M.R.'s related services or sign-off on the removal of all of M.R.'s after school, in-home, and summer services, in order for M.R. to remain at [CTC]." Id. at ¶ 161. Plaintiffs allege that the Cedar Grove school district subsequently "issued her a letter indicating that M.R. would need to change placements due to his related service needs." Id. at ¶ 163.

According to Plaintiffs, "[b]y a twist of fate, [and] prior to her meeting with Cedar Grove personnel to consent to the removal of M.R.'s services, B.R. learned that she did not have to choose between M.R.'s placement at [CTC] and all of the related services M.R. required to maintain his progress." Id. at ¶ 165. Rather, Plaintiffs allege that "she was assisted in making an arrangement with Cedar Grove that would allow M.R. to maintain both his placement and his related services for the time being," since "may [sic] other parents had already signed-off on the removal of their children's related services in order for their children to remain in their beloved [private schools for students with disabilities]." Id. at ¶ 166.

c.      **Procedural History**

On June 30, 2016, Plaintiffs filed their Complaint, asserting the following claims against the DOE: Count One – violation of the right to equal protection under the Fourteenth Amendment; Count Two – violation of the right to procedural due process under the Fourteenth Amendment; Count Three – violation of the right to substantive due process under the Fourteenth Amendment; Count Four – violation of the Individuals with Disabilities Act, 20 U.S.C. § 1400, et seq., ("IDEA"); Count Five – violation of the right to thorough and efficient

education under the New Jersey Constitution; Count Six – impairment of contract under the United States and New Jersey constitutions; and, Count Seven – violation of the New Jersey Administrative Procedure Act, N.J.S.A. 52:14B-1, et seq., ("NJADA"). Furthermore, some Plaintiffs assert additional, individualized claims against the DOE: Count Eight – B.R. o/b/o M.R. asserts a claim for declaratory judgment and injunction; Count Nine – TCI asserts a claim for declaratory judgment and injunction; Count Ten – HollyDELL asserts a claim for declaratory judgment and injunction; and, Count Eleven – B.R. and S.D. assert a claim for attorneys' fees under the IDEA. On November 4, 2016, the DOE filed a motion to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and Plaintiffs have opposed that motion.

## II.    STANDARD OF REVIEW

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the…

claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (internal quotation marks and citation omitted); Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir. 2013) (internal quotation marks and citation omitted) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.").

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations marks and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. (internal quotation marks omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. (internal quotation marks and brackets omitted).

## III. DISCUSSION

### a. The Doctrine of Sovereign Immunity

The DOE argues that, pursuant to the Eleventh Amendment, it is immune from suit in regard to Plaintiffs' federal and state constitutional claims, as well as Plaintiffs' claim under NJADA. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." Interpreting that language, the Supreme Court has declared that a federal court may not adjudicate a lawsuit brought by a citizen against his own state.  Hans v. Louisiana, 134 U.S. 1, 13-14 (1890); see Edelman v. Jordan, 415 U.S. 651, 662-63 (1974) (stating that "this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.").  This protection extends to arms of the state – including agencies, departments and officials – when the state is the real party in interest. Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002); see Chisolm v. McManimon, 275 F.3d 315, 323 (3d Cir. 2001).

For the purposes of the Eleventh Amendment, the DOE is an arm of the state government.  See Wright v. New Jersey/Dep't of Educ., 115 F. Supp. 3d 490, 494 (D.N.J. 2015) ("The Department of Education is considered an arm of the state government for purposes of determining sovereign immunity under the Eleventh Amendment."); see also N.J.S.A. § 18A:4-1 (stating that New Jersey Department of Education is "a principal department in the executive branch of the state government").  Furthermore, Plaintiffs do not contend that the State is not the real party in interest.[6]  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984) (stating that the state is the real party in interest whenever "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.").  Because a judgment in this action would adversely affect the State of New Jersey, the

---

[6] Plaintiffs specifically allege that the State of New Jersey, through the DOE, violated their rights under the federal and state constitutions.  See Compl., ¶¶ 169, 176, 182, 192, 197.

Court concludes that the DOE is immune from liability arising out of a suit against it in federal court, unless Plaintiffs' claims fall within an exception to the doctrine of sovereign immunity.[7]

Under the Eleventh Amendment, there are three narrowly circumscribed exceptions to the application of the sovereign immunity doctrine: (i) Congress has abrogated sovereign immunity and authorized suits against the states; (ii) a state has waived sovereign immunity by consenting to suit; and (iii) suits against individual state officers for prospective injunctive or declaratory relief to end an ongoing violation of federal law. MCI Telecomm. Corp. v. Bell Atlantic – Pennsylvania, 271 F.3d 491, 503-04 (3d. Cir. 2001). In the instant matter, Plaintiffs do not argue that Congress has abrogated sovereign immunity with regard to the challenged claims, or that New Jersey has consented to suit. Instead, Plaintiffs only argue that the DOE is not immune from suit under the Eleventh Amendment, since their claims seek prospective injunction and declaratory relief, and not monetary relief. Stated differently, Plaintiffs contend that this action falls within the third exception articulated in MCI Telecomm. Corp., i.e., the Ex Parte Young exception. See MCI Telecomm. Corp., 271 F.3d at 506-08.

It is well settled that the Eleventh Amendment does not preclude lawsuits against state officials, in their official capacities, to enjoin violations of federal law even where the remedy

---

[7] While not argued by Defendant, Plaintiffs do not properly plead their federal constitutional claims under 42 U.S.C. § 1983. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-907 (3d Cir. 1997) ("By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law."); see also Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 611 (2008). Instead, Plaintiffs assert their federal constitutional claims directly under the Constitution. See Morse, 132 F.3d at 906-907.

Relatedly, Plaintiffs do not properly plead their New Jersey constitutional claims under the New Jersey Civil Rights Act, N.J.S.A. § 10:6-1, et seq. See Martin v. Unknown U.S. Marshals, 965 F. Supp. 2d 502, 548 (D.N.J. 2013) (stating that "civil claims for violations of the New Jersey Constitution can only be asserted by way of the New Jersey Civil Rights Act."); see also Jecrois v. Sojak, No. 16-1477, 2017 U.S. Dist. LEXIS 83806, at *27 n.17 (D.N.J. Jun. 1, 2017). Rather, Plaintiffs assert their claims directly under the New Jersey constitution.

would enjoin enforcement and implementation of an official state policy.  See Ex Parte Young,

209 U.S. 123, 159-60 (1908).  Since Ex Parte Young, the Supreme Court has extended this

holding to violations of federal statutes, as well as the United States Constitution.  See Green v.

Mansour, 474 U.S. 64, 68 (1985); see also Will v. Michigan Dep't of State Police, 491 U.S. 58,

71, n.10 (1989); Edelman, 415 U.S. at 660.  To fall within this particular exception, a plaintiff

must allege a present violation of federal law.  See Papasan v. Allain, 478 U.S. 265, 278 (1986)

(stating that it is insufficient to assert a violation of federal law that has occurred in the past).  In

other words, only prospective relief is available.  See Quern v. Jordan, 440 U.S. 332, 337 (1979);

Alden v. Maine, 527 U.S. 706, 747 (1999).

Contrary to Plaintiffs' argument, the Ex Parte Young exception is inapplicable here, since

Plaintiffs have not named any individual state officials in their Complaint.  Generally, courts

have routinely held that sovereign immunity applies to a state or state agency, regardless of

whether legal or equitable relief is sought.  See Halderman, 465 U.S. at 100-01; see also Thorpe

v. New Jersey, 246 Fed. Appx. 86, 87 (3d Cir. 2007).  The exception in Ex Parte Young does not

alter this fundamental precept.  Indeed, the exception "does not apply if, although the action is

nominally against individual officers, the state is the real, substantial party in interest and the suit

is in fact against the state."  MCI Telecomm. Corp., 271 F.3d at 506.  Stated differently, the Ex

Parte Young exception is clearly limited to actions against *state officials*.  See Law Offices of

Christopher S. Lucas & Assocs. v. Disciplinary Bd., 128 Fed. Appx. 235, 237 (3d Cir. 2005)

("The Ex Parte Young exception applies only in actions against individual state officers, and not

to state agencies.").  Since Plaintiffs have not named any state officials, the <u>Ex Parte Young</u> exception to Eleventh Amendment immunity is inappropriate.[8]

Accordingly, the Court holds that the Eleventh Amendment bars the following federal claims: Count One – violation of the right to equal protection; Count Two – violation of the right to procedural due process; Count Three – violation of the right to substantive due process; and, Count Six – impairment of contract under the United States Constitution.  <u>Quern</u>, 440 U.S. at 345; <u>see</u> <u>Anderson v. Pennsylvania</u>, 196 Fed. Appx. 115, 117 (3d Cir. 2006); <u>see also</u> <u>Lopez v. Corr. Med. Servs.</u>, No. 04-2155, 2009 U.S. Dist. LEXIS 55386, at *11 (D.N.J. Jun. 30, 2009).  In addition, the Court concludes that the Eleventh Amendment bars the following state claims: Count Five – violation of the right to thorough and efficient education under the New Jersey constitution; Count Six – impairment of contract under the New Jersey constitution; and, Count Seven – violation of the NJADA.  <u>Raygor v. Regents of the Univ. of Minn.</u>, 534 U.S. 533, 540-41 (2002); <u>see</u> <u>NCAA v. Christie</u>, 61 F. Supp. 3d 488, 507 (D.N.J. Nov. 21, 2014); <u>see also</u> <u>King v. Christie</u>, 981 F. Supp. 2d 296, 310 n.12 (D.N.J. 2013).  The remaining counts will be addressed, <u>infra</u>.

**b.**     <u>**ASAH**</u>

The DOE contends that ASAH cannot demonstrate either organizational or associational standing, and thus it should be dismissed.  The Court agrees.  In the Complaint, ASAH is only

---

[8] Plaintiffs appears to concede that this exception is inapplicable.  <u>See</u> Pls.' Br. in Opp. at pg. 24 n.1.  Indeed, Plaintiffs state that, "[i]f this identification of the DOE officials is a concern for the Court, the appropriate remedy is dismissal without prejudice, allowing Plaintiffs to formally amend their complaint to name the defendants implicated."  <u>Id.</u>  The Court grants Plaintiffs leave to amend their Complaint to assert these counts, as set forth in the next paragraph, against individual state officials, within thirty (30) days from the date of the Order, and consistent with the dictates of this Opinion.

mentioned twice. Plaintiffs first allege that "ASAH is a not-for-profit organization of private schools and agencies in New Jersey," and that it maintains a business office in Hamilton Square, New Jersey. Compl., ¶ 1. In addition, Plaintiffs asserts that "ASAH and numerous [private schools] sought to have the DOE reconsider" its decision to impose maximum salary requirements for related service providers. Id. at ¶ 84.

Article III of the United States Constitution limits the scope of federal courts to actual "cases" or "controversies." See U.S. Const., art. III, § 2. "The [standing] doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood," and, as a result, "[t]he doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Relevant here, an organization, such as ASAH, may have standing to bring suit in two limited circumstances: (i) organizational standing, and (ii) associational standing. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 279 (3d Cir. 2014); Pennsylvania Prison Soc. v. Cortes, 508 F.3d 156, 162-63 (3d Cir. 2007); see also Vandeusen v. Bordentown Investors, LLC, No. 08-3207, 2009 U.S. Dist. LEXIS 6755, at *6-9 (D.N.J. Jan. 29, 2009).

First, "an organization may be granted standing in its own right to seek judicial relief from *injury to itself* and to vindicate whatever rights and immunities the [organization or] association itself may enjoy." Cortes, 508 F.3d at 162-63 (emphasis in original); see Blunt, 767 F.3d at 285 (stating that an organization must allege a concrete and demonstrable injury). In the instant matter, other than identifying itself, ASAH has simply alleged that it requested the DOE to reconsider its decision to impose maximum salaries for related services. Compl., ¶ 84; see Blunt, 767 F.3d at 279 (internal quotation marks and citation omitted) (stating that "a mere

interest in a problem, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization adversely affected or aggrieved.").  Indeed, ASAH has failed to adequately allege that it suffered any concrete and demonstrable injury.  See Blunt, 767 F.3d at 285; see also Vandeusen, 2009 U.S. Dist. LEXIS 6755, at *9-10 (dismissing an organization, since it "has not alleged any facts that could show that [it] suffered an injury.").  Stated differently, ASAH does not even allege how it was affected by the actions of the DOE, and what rights that it seeks to vindicate in this action.  Accordingly, ASAH has failed to establish organizational standing.

Next, an organization may assert claims on behalf of its members, but it "must demonstrate that (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Goode v. City of Philadelphia, 539 F.3d 311, 324 (3d Cir. 2008) (internal quotation marks and citation omitted).  ASAH has failed to satisfy the first prong of associational standing. Specifically, ASAH has failed to identify any of its members in the Complaint, thus the organization cannot demonstrate that its members have standing to sue in their own right.  See Blunt, 767 F.3d at 280 (internal quotation marks and citation omitted) (stating that "the plaintiff organization must make specific allegations establishing that at least one identified member had suffered or would suffer harm."); Vandeusen, 2009 U.S. Dist. LEXIS 6755, at *10-11 (dismissing an organization because it "has not alleged that [the individual plaintiff] is a member and has not demonstrated its members have standing to sue in their own right.").  Because ASAH has failed to allege this threshold requirement, it cannot establish associational standing.

**c.      IDEA Claim**

In Count Four, Plaintiffs assert a claim against the DOE under the IDEA.[9] Plaintiffs

allege, without citing any specific provision of the statute, that the DOE "violated the IDEA by

imposing maximum salaries for related service providers that would either prevent [private

schools] from fully implementing students' IEPs or have the costs of full implementation be

disallowed for payment and excluded from future [private school] tuition calculation." Compl.,

at ¶ 186. In addition, Plaintiffs complain that the DOE "violated the IDEA by causing placement

decisions for students with special needs to be driven by related service costs and availability,

rather than appropriateness and student need." Id. at ¶ 187. Based on those allegations,

Plaintiffs seek the following declaratory and injunctive relief: (i) "[a] declaration that the

[DOE's] maximum salary requirements for related service providers violate the IDEA;" (ii) "[a]n

Order invalidating maximum salary requirements for [private school] related service providers;"

(iii) "[a]n Order requiring that disabled students' placement determinations be based exclusively

on appropriateness, absent consideration of related service costs." Id. at ¶ 187(A)-(C).

i.     **The Students**

The DOE contends that the Students do not have standing to bring their IDEA claim in

Count Four, since there are no allegations that the actions of the DOE caused any injuries.

Instead, the DOE argues that the alleged injuries are purely conjectural and hypothetical. In

opposition, Plaintiffs claim that the Students seek declaratory and injunctive relief, and that they

_____

[9] In their Complaint, Plaintiffs do not identify which named plaintiffs are asserting this particular claim against the DOE. However, in their opposition, Plaintiffs clarified that TCI and HollyDELL – the private schools – and Homa and Grossi – the related service provider – "did not allege a cause of action under the IDEA." Pls.' Br. in Opp. at pg. 40. Therefore, it appears that only ASAH and B.R. o/b/o M.R. and M.R. o/b/o W.D. (collectively, the "Students") assert a claim against the DOE under the IDEA. Because the Court has dismissed ASAH, the Court will only address the Students.

have satisfactorily alleged a threat of immediate injury. Specifically, Plaintiffs contend that "[the Students] are and will be, each school year, placed at risk of being denied their prescribed related services." Pls.' Br. in Opp. at pg. 43. Plaintiffs further contend that, "[d]ue to the DOE's maximum salary imposition, students have been placed at the mercy of their benevolent [private schools] that have, thus far, accepted substantial, unreimbursed financial losses in order to enable students to received their prescribed related services." Id.

Article III standing consists of three irreducible elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc., 136 S. Ct. at 1547 (citing Lujan, 504 U.S. at 560-61); see J.T. ex rel. A.T. v. Dumont Pub. Schs., 533 Fed. Appx. 44, 48 (3d Cir. 2013) (addressing standing in the context of the IDEA). To demonstrate an injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc., 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560). The Supreme Court in Spokeo explained that "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist." Id. (citation omitted). The Court continued, "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real,' and not 'abstract.'" Id. (citation omitted). In order for an injury to be particularized, "it 'must affect the plaintiff in a personal and individual way.'" Id. (quoting Lujan, 504 U.S. at 560 n.1).

Plaintiffs claim that "[i]t is axiomatic that a request for injunctive relief seeks to prevent future harm." Pls.' Br. in Opp. at pg. 43 (emphasis in original). In the standing context, a plaintiff that seeks injunctive or declaratory relief is required to demonstrate a substantial likelihood of future harm. McNair v. Synapse Grp. Inc., 672 F.3d 213, 225 (3d Cir. 2012); see

Brandt v. Monte, 626 F. Supp. 2d 469, 493 (D.N.J. 2009); see also City of Los Angeles v. Lyons, 461 U.S. 95, 105-06 (1983). Although future harm is sufficient to confer standing, "the future injury must be imminent." Crisafulli v. Ameritas Life Ins. Co., No. 13-5937, 2015 U.S. Dist. LEXIS 56499, at *5-6 (D.N.J. Apr. 29, 2015); see Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013). "The determination of what is imminent is somewhat elastic, but it is fair to say that plaintiffs relying on claims of imminent harm must demonstrate that they face a realistic danger of sustaining a direct injury from the conduct of which they complain." Blunt, 767 F.3d at 278. The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient." Clapper, 133 S. Ct. at 1147 (alteration in original) (citation omitted).

In the instant matter, the Students complain that the imposition of maximum salaries for related service providers jeopardizes the ability of their private schools to implement their IEPs, since the private schools may not be reimbursed for such services.[10] As a result, the Students claim that they may be forced to change schools or potentially receive less related services. For instance, Plaintiffs allege that, "if S.D. was faced with having to choose whether to maintain W.D.'s placement at TCI and forfeit his related services or accept an in-district or other placement where W.D.'s related services were available, she would elect for W.D. to remain at TCI, due to its exceeding appropriateness by all other metrics." Compl., ¶ 147.

---

[10] In their opposition, Plaintiffs do not cite to any source of authority to suggest that the DOE has violated the IDEA. Indeed, Plaintiffs have failed to even identify whether the DOE has committed a procedural and/or substantive violation under the Act. See P.K. ex rel. S.K. v. New York City Dep't of Educ., 819 F. Supp. 2d 90, 105 (E.D.N.Y. 2011) ("A procedural violation generally concerns the process by which the IEP and placement offer was developed and conveyed; on the other hand, a substantive violation arises from a deficiency in the programming being offered."), aff'd, 526 Fed. Appx. 135 (2d Cir. 2013). Nonetheless, the Court need not address the merits of the claim, since the Count concludes that the alleged future harm is too attenuated to create a real and immediate threat.

Nonetheless, the Court concludes that the Students' mere apprehension of possible future injury is insufficient to establish standing. See Blunt, 767 F.3d at 278; see Young v. Johnson & Johnson, No. 11-4580, 2012 WL 1372286, at *3 (D.N.J. Apr. 19, 2012) ("For purposes of the standing inquiry, however, apprehension about a possible future injury is insufficient to establish injury-in-fact."), aff'd, 525 Fed. Appx. 179 (3d Cir. 2013). The parties do not dispute that both M.R. and W.D. are receiving their required IEP program, even though the DOE has changed its "longstanding practice" and implemented maximum salaries for related services providers. However, some private schools have taken measures to ensure that related services remain cost effective. For instance, TCI negotiated a lower rate with AJL, a related services provider, for physical and occupational therapy services in order to "ensure that its students received all of the related services required by their IEPs, mandated under the IDEA, and administered by experienced professionals." Compl., at ¶ 125.

Importantly, the DOE has explained that, to the extent that the cost of providing related services creates financial difficulties, the private school "should contact the [DOE] – Office of School Finance immediately to discuss the matter," so that department can "offer appropriate solution(s)." Jones Cert., Ex. A, the May 2016 Memorandum at pg. 3. In that connection, the DOE further explains that private schools can still enter into separate agreements with the sending school district to charge for certain related services, including home-based and weekend counseling programs and uncommon or unique related services. Id. at pg. 1-2. Nevertheless, the DOE states that, if the private school cannot implement the IEP as written, "it must immediately notify the sending district," and "[t]he sending district and the [private school] shall work together to ensure that the student receives the required services." Id. at 2. Indeed, the DOE states that "[t]he sending district must take action to ensure that the student receives his or her

program and/or services," which "may include engaging a service provider outside of the [private school] and/or making arrangements to ensure the [private school] provides the required related services outside of the [private schools] charged tuition rate." Id.

Based on these circumstances, it cannot fairly be said that the alleged future harm is either imminent or certainly impending. Blunt, 767 F.3d at 278; see Tri-Realty Co. v. Ursinus Coll., 124 F. Supp. 3d 418, 436–37 (E.D. Pa. 2015) (internal quotation marks and citation omitted) (stating that "there must be a realistic chance – or a genuine probability – that a future injury will occur in order for that injury to be sufficiently imminent."). To the extent that TCI and CTC have any difficulties providing related services to M.R. and W.D., the DOE has established certain safeguards to prevent a failure in the implementation of IEP programs. Indeed, TCI and CTC may contact the DOE – Office of School Finance or the sending district to express concerns about their financial problems, and those state entities, according to DOE policies, would work with the private schools to provide M.R. and W.D. with their prescribed related services. While the Students ask this Court to conclude that TCI and CTC would not be able to pay for related services, and that the DOE and the sending school districts would not be able to assist in providing those services to M.R. and W.D., the Court finds that the Students have failed to adequately allege a realistic danger that M.R. and W.D. will be "placed at risk of being denied their prescribed related services." Pls.' Br. in Opp. at pg. 43. At best, the Students have alleged mere apprehension grounded in speculation, which is insufficient to establish standing. See Young, 2012 WL 1372286, at *3. Accordingly, the Court dismisses Count Four. Relatedly, in Count Eleven, Plaintiffs assert a claim for attorneys' fees under the IDEA. However, because this Court has dismissed the substantive claim under the IDEA, the claim for attorneys' fees is correspondingly dismissed.

### d.     Counts for Declaratory Judgment and Injunction

Plaintiffs assert three separate counts for "Declaratory Judgment and Injunction" against the DOE.  In Count Eight, B.R. o/b/o M.R requests a declaration that the DOE has interfered with his rights, under the IDEA, "to have his program implemented as formulated by the IEP team, without threatening his appropriate placement."  Compl., ¶ 210(A).  In addition, B.R. o/b/o M.R seeks to enjoin the DOE "from enforcing any regulations that could cause M.R. to be removed from his appropriate placement for financial... reasons."  Id. at ¶ 210(B).  In Counts Nine and Ten, TCI and HollyDELL request a declaration that the DOE's interpretation of state regulations interferes with their respective obligations under the IDEA.  Id. at ¶¶ 212(A), 214(A).  Finally, in Count Nine, TCI requests "[a]n Order compelling the [DOE] to permit TCI to receive full payment for all of its related services expenses incurred in implementing students' IEPs using approved agencies and/or qualified personnel."  Id. at ¶ 212(B).

However, courts in this circuit routinely dismiss stand alone counts for declaratory and injunctive relief, since such claims are requests for remedies, and not independent causes of action.  Chruby v. Kowaleski, 534 Fed. Appx. 156, 160 n.2 (3d Cir. 2013); see Kabbaj v. Google Inc., 592 Fed. Appx. 74, 75 n.2 (3d Cir. 2015) (affirming dismissal of count for "Declaratory and Injunctive Relief" because "we agree with the District Court that declaratory and injunctive relief are remedies rather than causes of action."); see also Neuss v. Rubi Rose, LLC, No. 16-2339, 2017 WL 2367056, at *9 (D.N.J. May 31, 2017) (dismissing separate counts as improper, since "injunctive and declaratory relief are remedies – not independent causes of action."); Cole v. NIBCO, Inc., No. 13-7871, 2015 WL 2414740, at *15 (D.N.J. May 20, 2015) (holding that "declaratory relief and injunctive relief, as their names imply, are remedies, not causes of action."); Lee Dodge, Inc. v. Kia Motors Am., Inc., No. 10-5939, 2011 WL 3859914, at *1 n.1

(D.N.J. Aug. 31, 2011) (dismissing counts for declaratory judgment and injunctive relief for state a claim because they "are not substantive claims but rather requests for remedies").

Accordingly, the Court concludes that dismissal of those counts is appropriate, since they are not independent, substantive claims, but rather, mere requests for remedies.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is **GRANTED**.  However, the Court grants Plaintiffs leave to amend the Complaint to assert claims against individual state officials in Counts One, Two, Three, Five, Six and Seven, within thirty (30) days from the date of the Order, and consistent with the dictates of this Opinion.


DATED: June 30, 2017                                          /s/ Freda L. Wolfson
                                                             The Honorable Freda L. Wolfson
                                                             United States District Judge